Russell v. Tate.

---

## RUSSELL V. TATE.

1. MUNICIPAL CORPORATIONS : *Illegal appropriation of funds.*

Under the laws of this State the council of a town is without power to appropriate money to aid in the building of a court house for the county, to be located in such town.

2. SAME: *Same : Remedy : Parties.*

The tax-payers of a town may maintain a suit in equity to prevent the misapplication of its funds. And chancery has power in such case to grant affirmative as well as injunctive relief. (*Mansf. Dig., sec. 929.*)

3. SAME: *Same.*

After the commencement of an action brought to obtain the cancellation not only of a warrant issued pursuant to such illegal appropriation, but also of the appropriation itself, and to recover a sum paid out thereon, the jurisdiction of the court cannot be ousted by the act of the defendants in recalling and cancelling the warrant.

4. SAME: *Same.*

The aldermen of an incorporated town, having with others executed a bond binding themselves to build within the corporate limits, a court house to be given to the county, appropriated the sum of $1000 out of the municipal funds to aid in such building. Part of the sum thus appropriated was immediately paid by the Treasurer on the order of the Mayor, and a warrant was issued for the residue. In an action brought by tax-payers of the town against the Mayor, Aldermen and Treasurer, to cancel the outstanding warrant, etc., and to recover the sum paid out, HELD : That the taking of such money by the defendants was the conversion of a trust fund, and they were liable therefor.

APPEAL from *Pope* Circuit Court in Chancery.

ROBERT TOOMER, Special Judge.

Suit in equity by certain inhabitants and tax-payers of the Town of Russellville, against appellants, the Mayor, Aldermen and Treasurer of that place, to enjoin the payment of a certain order upon the Treasurer, and to have restitution of certain moneys paid out. A temporary restraining order was granted. Defendants, after the institution of the suit, called in and cancelled the outstanding warrant, and moved to dissolve the injunction; moved to dismiss the complaint so far as it sought a recovery of the money paid out, upon the ground that equity had no jurisdiction of that; demurred, first, for want of parties; second, because complaint does not state a cause of action in favor of plaintiffs; third, because the court had no jurisdiction of the subject matter of the complaint; 4th, because there was no equity in complaint as to the restitution of the money paid out. All these were overruled, and defendants answered, setting forth at great length the matters raised by the demurrer, and in addition thereto that defendants had submitted the propriety of their conduct to the citizens of the town at the next ensuing municipal election, and had been re-elected upon that issue by a large majority. The facts were about these: A proposition to change the county seat of Pope County from Dover was submitted to the people of that county in this form:

1st.   Shall the county seat be changed?
2d.   Shall it be changed to Russellville?
3d.   Shall it be changed to Atkins?

As an inducement to the people to vote for a change to Russellville, certain citizens agreed, and gave bond in the sum of $50,000, to build a court house, jail, etc., and give them to the county free of cost. By the vote, Russellville was selected as the county seat, and the obligation to build the court house, etc., devolved upon the subscribers to the contract. *The five aldermen of the town*, with others, *were signers of the bond*. While this court house was being constructed by the individuals who agreed to build it and give it to the county, a meet-

ing of the City Council was called and there were present the Mayor, five Aldermen, and City Treasurer. A resolution was offered that $1000 be appropriated to help build the court house, and that the Mayor draw his warrant on the Treasurer for that sum in favor of the chairman of the building committee, who was one of the bondsmen and an Alderman. This was adopted. The Treasurer was called upon to state what amount of money he had. He answered $675. The Mayor drew two warrants in favor of the chairman of the building committee, one for $675, which was paid about 10 o'clock that same night; the other for $325, which was not paid for want of funds.

The bill, as before stated, sought a cancellation of the outstanding warrant, and appropriation, and the restitution of the $675 paid to the building committee.

Decree conformably to the prayer of the bill, and appeal by defendants.

*Wilson & Granger* and *G. W. Shinn*, for appellants.

1. The court erred in refusing to dismiss the injunction branch of the case. There was no *necessity* for the injunction proceedings, and that part of the complaint was a mere pretext for getting into court on the equity side. A bare allegation of threatened injury is not sufficient. Facts must be stated, to show the apprehension of injury is well founded. *22 Cent. L. J., 39, and note.*

2. The claim to recover the $675 was a purely legal one, and to give a court of equity jurisdiction it must appear that there is no remedy at law. *2 Story Eq., 156.* A mandatory injunction will not be granted when the thing is accomplished, and there is a remedy at law. *2 Green (N. J.) Chy., 379; 20 Cent. L. J., 236, 244, notes 21, 23, 24.* Nor will equity, because it has jurisdiction of one cause of action, retain the case to decide one purely legal. *11 N. E., 839; 15 id., 740-1; Pom. Eq. Jur., sec. 178; 10 Atl. Rep., 884; 1 Ark., 42.*

3.   The *real* parties in interest must be plaintiffs.   *Mansf.. Dig., sec. 4933; Newm. Pl. and Pr.,* 60, 61, 77.   The money belonged to the town, and the right of action was in it, and not in private citizens.   *2 Dill. Mun. Corp., sec. 729, note 1, and 3, sec. 730, note 1; ib., 730 a and 730 b, and note 1; 4 Pac. Rep., 1017; 20 Cent. L. J.,* 235, *par.* 17; *2 Dill. Mun. Corp., secs. 732, 735, note 1, 736; 14 N. Y.,* 371; *25 Ark.,* 301; *2 N. E., 736; 4 id.,* 10; *9 id.,* 407.

This was not an "illegal exaction" under section 13, article 16, Constitution.   *Bouv. Dic.,* 490; *34 Ark.,* 603; *39 id.,* 412.

*J. G. Wallace,* for appellees.      •

1.   Appellants, as the Town Council, had no power to appropriate and use the revenues and moneys of the town to build a court house for the county.   *Mansf. Dig., sec. 764; 31 Ark., 462; 45 id.,* 337; *108 U. S.,* 110; *20 Wall.,* 655; *art. 1, sec. 5,. Const.; 34 Ark.,* 246; *33 id.,* 704.

2.   When a court of chancery acquires jurisdiction for one purpose, it will dispose of the whole case.   *37 Ark.,* 287; *1 id., 85; 34 id.,* 410; *29 id.,* 612; *14 id.,* 50.   The right to injunction was within the letter of the statute.   *Mansf. Dig., sec. 929.*

The remedy for the recovery of the $675 is purely of equitable jurisdiction.   *Const., art. 16, sec. 13; Mansf. Dig., secs. 929, 3731; 34 Ark.,* 607.

Equity always takes cognizance of breaches of trust.   *18 How.,* 331; *Bisp. Eq., sec.* 49; *1 Sto. Eq., secs. 60 and 534.*   If the money has been paid, courts of chancery will decree restitution.   *2 Story Eq., sec. 1252; Dill. Mun. Corp., sec. 729–30; 6 Allen,* 152.

3.   Any person owning taxable property may bring his bill in chancery.   *Mansf. Dig., sec. 929; 33 Ark. 704; 6 Allen,* 52; *Cooley Torts,* 518; *18 How.,* 331; *Story Eq., sec. 1252* (a); *Dillon Mun. Corp., sec. 730 and notes.*

Russell v. Tate.

SANDELS, J.  An analysis of the case shows six questions for decision :

First—Has equity jurisdiction as to the matters stated in the bill?

Second—Are residents and tax-payers proper parties plaintiff?

Third—May affirmative as well as injunctive relief be had in such a proceeding?

Fourth—Was the appropriation of the $1000 by the council valid or void?

Fifth—Are Aldermen, as such, liable to an action for votes given upon measures before them?

Sixth—What liability, if any, did the Mayor, ordering. the Treasurer making, and the council receiving the payment, incur by reason of this transaction?

The so-called appropriation was a nullity.  *Jacksonport v. Watson, 33 Ark., 704; Sykes v. Mayor, 55 Miss., 115; scc. 5, art, 12, Const.; Minot v. West Roxbury, 112 Mass., 1.*

The officers of the city are trustees in the management and application of the funds and property of the people of the city. *2d Dill Mun. Corp., 915.*  The application of municipal funds to illegal purposes by them is a breach of trust.  *2d Dill. Mun. Corp., 919,* and notes.  Equity has jurisdiction to prevent the misapplication or waste of trust property.  *2 Story Eq. Jur., 1252,* and note.  The fact that after the suit was brought the City Council recalled and cancelled the unpaid warrant did not oust the jurisdiction of the court.  That was but part of the purely equitable relief demanded.  It was desired to prevent its reissue and cancel the appropriation.  Besides, under our chancery system had the cancellation of the warrant been the only original ground of equity jurisdiction, it was not lost. *Price v. State Bank, 14 Ark., 50.*

Suits by tax-payers against towns and their officers to prevent or remedy misapplication of town funds are not only allowed by statute but it is the prevailing doctrine in America,

LII.—85.

1.  MUNICIPAL CORPORATIONS: Illegal appropriation of funds.

2  SAME: Remedy: Parties.

that tax-payers may maintain them, in the absence of statute. Their relations to the municipality are analogous to those of stockholders to a private corporation. *Mansf. Dig., sec. 929; Jacksonport v. Watson, 33 Ark., 704; Crampton v. Zabriski, 101 U. S., 601; 2 Dill. Mun. Corp., 914–915; Blakie v. Staples, 13 Grant (Canada), 67,* cited in note on *p. 902; 2 Dill. Mun. Corp.*

8. SAME:
Same.

There is no foundation in the authorities for the claim that the power of chancery is only injunctive. It would be a reproach to justice if it were true. In the present case the appropriation was made, the warrant was drawn, and the money paid, by the Treasurer before an attorney could have comprehended the situation and have written the caption of a complaint. Chancery has ample power to prevent further wrong and require reparation for that which has been done. *2 Story Eq. Jur., 1252,* and notes; *Frost v. Belmont, 6 Allen, 152; Citizens' Loan Assn. v. Lyon, 29 N. J. Eq., 110; Attorney Genl. v. Poole, 1 Craig & Ph., 17; People v. Fields, 58 N. Y., 491; Attorney Genl. v. Boston, 123 Mass., 460; Atty. Genl. v. Dublin, 1 Bligh. 312; 2 Dill. Mun. Corp., 909–912.*

4. SAME:
Same.

As against the liability of these defendants, it is contended that a City Council being in some sort a legislative body, its members are not liable for the erroneous exercise of their discretion in voting upon measures before them. This is true. *Jones v. Loving, 55 Miss., 109; Freeport v. Marks, 59 Pa. St., 253.*

But where, after exercising their discretion in voting $1000 of the money of the town, to pay an obligation which they and a few others had bound themselves to discharge, they or their building committee *took the money,* it was a conversion of trust funds, for which each of them, as also the Mayor who ordered, and the Treasurer who made, the payment, are liable. *Frost v. Belmont, 6 Allen. 152; Citizens' Loan Assn. v. Lyon, 29 N. J. Eq., 110; Atty. Genl. v. Poole, 1 Craig & Ph., 17; Atty. Genl. v. Wilson, 1 Craig & Ph., 1; Blakie v. Staples, 13 Grant (Canada), 67.*

The vote of confidence given appellants at the next ensu-
ing city election does not effect their liability to repay the
money which they took from the city treasury.

Affirmed.